# Whalley, Appellant, *v.* Philadelphia & Reading Railway Co.

*Negligence—Railroads — Interstate commerce — Federal safety appliance acts—Making up trains—Shifting cars.*

The Federal Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. 531, as amended by the Acts of March 2, 1903, c. 976, 32 Stat. 943, and March 4, 1911, c. 285, 36 Stat. 1363, 1397, requiring engines and cars engaged in interstate commerce to be equipped with air brake apparatus, does not apply in cases where drafts of cars engaged in interstate commerce are being shifted about in the process of making up trains and the failure of railroad employees to couple the air brakes on such drafts of cars will not render the railroad company liable for injuries occasioned by such failure.

Argued Jan. 19, 1915.  Appeal, No. 350, Jan. T., 1914, by plaintiff, from judgment of C. P. No. 5, Philadelphia Co., March T., 1912, No. 842, for defendant n. o. v., in case of William Whalley v. Philadelphia & Reading Railway Company.  Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.  Affirmed.

Trespass to recover damages for personal injuries. Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $19,000.  The court subsequently entered judgment for defendant n. o. v.

*Error assigned,* among others, was in entering judgment for defendant n. o. v.

*Augustus Trask Ashton,* with him *Victor Frey,* for appellant.

*Wm. Clarke Mason,* for appellee.

OPINION BY MR. JUSTICE POTTER, March 1, 1915:

In this action the plaintiff seeks to recover damages for personal injuries which resulted, as he alleges, from the negligence of the defendant company.  At the time of the accident, in which he was hurt, he was employed as a brakeman upon a freight train made up of cars which were being used in interstate commerce.  The train was not however, at the time made up for a through run, but was passing through a shifting operation in the terminal yard of the defendant company.  While the train was temporarily halted upon a connecting track, waiting for another train ahead of it to pull out of the way, the plaintiff was upon the pilot of the engine.  By reason of the breaking, or pulling out of a drawhead, the cars in the front train separated, and part of them drifted backward, down grade, and collided with the front of the engine of the rear train, and injured the

plaintiff. As the train was at the time being used in interstate commerce, the plaintiff invoked the application of the Safety Appliance Acts of Congress, which require engines and cars engaged in interstate commerce, to be equipped with air brake apparatus. Such equipment was provided in this case, but it was not called into use during the switching operation. Counsel for plaintiff contend that under a proper construction of the Safety Appliance Acts, the failure of the employees of the defendant company to make use of the air brake equipment, at the time and place described, constituted negligence upon the part of the defendant, for the results of which, it is liable to respond in damages to plaintiff. Upon the trial in the court below the jury were asked to determine whether the proximate cause of injury to the plaintiff was the breaking apart of the train, or the failure to couple up the air brakes; and they were instructed that as there was no evidence of negligence in connection with the breaking apart of the train, if they found that to be the proximate cause of the injury, the verdict must be for defendant. The finding of a verdict in favor of the plaintiff must therefore be accepted as establishing, as a fact, that the proximate cause of the injury was the failure to couple the air brakes. As the trial judge says, the cars were on a back siding, and were to be hauled over a connecting track, to the Erie avenue yard to be drilled out, separated, and made up into trains; it was a shifting movement, and during the whole time they were within yard limits, and not made up into a train for a through movement. At the time the break occurred the train was on a storage track, which is a yard track, fifty feet from the main line.

It was shown, however, that plaintiff instituted a suit upon this same cause of action in the United States District Court for this district, and that judgment of compulsory nonsuit was there entered against him. In his opinion refusing the motion to take off the nonsuit

there entered against this plaintiff, McPHERSON, J., said: "The acts of congress do not apply while drafts of cars are being shifted about in the process of making up a train." And in Erie Railroad Co. v. United States, 197 Fed. Rep. 287, in construing the same acts of congress, it was held that they were not meant to cover bona fide switching operations, and were not intended to apply to the sorting and switching work carried on in a terminal yard. Following the construction thus placed upon a Federal Law by the Federal Courts in this district, the trial judge entered judgment for defendant non obstante veredicto. In so doing we think he was fully justified. It would ill become us to give to a Federal statute a construction differing from that adopted by the Federal Courts, in considering its application to the precise state of facts now before us. The same question was considered upon an appeal, from a judgment upon a verdict directed in favor of the railroad company, in United States v. Erie Railroad Co., 212 Fed. Repr. 853. There the question of the compulsory use of air brake equipment in switching operations was elaborately considered, and it was held that the act of congress does not compel the air coupling of cars in switching movements. The conclusion there reached is supported by reasoning which is convincing. The record in this case, seems to us, to clearly show that the proximate cause of the injury was the pulling out, or breaking of the drawhead, which permitted the rear part of the train to run backward, until it collided with the engine of the train behind. But as to this, there was no evidence that the defendant was in any respect negligent, and it cannot be made the basis of any claim of liability. We do not see that the record discloses anything upon which it may fairly be held that the plaintiff is entitled to recover.

. The assignments of error are overruled, and the judgment is affirmed.