## PHILADELPHIA & R. RY. CO. v. THIROUIN.

(Circuit Court of Appeals, Third Circuit. December 29, 1925.)

No. 3321.

1. **Master and servant ⬅286(29)—Evidence of negligence as to brakeman inspecting car in moving train held insufficient for jury.**

In action under Federal Employers' Liability Act (Comp. St. §§ 8657–8665), that engineer failed to stop slow-moving train while brakeman made inspection to determine cause of sparks about car *held* insufficient evidence of negligence to go to jury in action for death.

2. **Master and servant ⬅286(15)—Evidence as to sufficiency of clearance between train and bridge girder injuring brakeman held insufficient for jury.**

In action under Federal Employers' Liability Act (Comp. St. §§ 8657–8665), for death of brakeman, killed while inspecting cause of sparks, evidence as to actual cause of injury *held* insufficient to go to jury on question of sufficient clearance between train and bridge girder.

3. **Master and servant ⬅89(1)—Railroad's duty to protect employees limited to place of work.**

Railroad is required to afford protection against dangers of use of particular place only

to those of its servants whose duties called them there.

4. **Master and servant ⬅96(1)—Liability under federal act based on negligence.**

Under Federal Employers' Liability Act (Comp. St. §§ 8657–8665), action for death of employee is based on negligence, which arises when master fails to perform a duty owed employee.

5. **Master and servant ⬅265(4)—Under federal act, negligence never presumed.**

Under Federal Employers' Liability Act (Comp. St. §§ 8657–8665), negligence is never presumed from fact of accident, but must be affirmatively proved, both as to element of duty and its violation, which proximately causes injury.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by Alwilda E. Thirouin, administratrix, of the estate of Raymond H. Thirouin, deceased, against the Philadelphia & Reading Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial awarded.

Edward L. Katzenbach and William V. Lee, both of Trenton, N. J., for plaintiff in error.

Ralph W. Botham, of New York City (Wilbur A. Heisley of Newark, N. J., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The widow of Raymond H. Thirouin, suing as his administratrix, brought this action under the Federal Employers' Liability Act to recover damages for the loss which she and his child had sustained by his death which occurred when in the employ of the Philadelphia & Reading Railway Company. 35 Stat. 65; Comp. St. §§ 8657–8665. To the judgment in her favor, the defendant sued out this writ of error.

The facts are pathetically few. Thirouin had been a freight brakeman in the employ of the defendant company for two years and had made the run in question many times by day and night. On this occasion he was one of the crew in charge of a train of sixty cars bound from West Virginia into Pennsylvania. At Chambersburg, about 12 miles from the place of the accident, a double inspection of the train was made and all cars were found in good condition. The train then proceeded eastwardly toward Shippensburg. It was night and Thirouin

was riding in the engine. Bridge No. 51 lay ahead. This bridge is a two track steel girder bridge of familiar type, spanning a subway. It is composed of three upright girders 46 feet long, one on the outer side of each of the two tracks and one in the center, the latter being 4 feet and $5\frac{1}{4}$ inches in height. The clearance between the extreme edge of the top plate of the center girder and a passing battleship coal car is $11\frac{1}{2}$ inches. When about a train's length from the bridge, moving up grade at about 5 miles an hour with gradually decreasing speed, the engineer called Thirouin's attention to sparks flying midway the train. Thirouin said: "Yes, I will go back and investigate what it is." With lantern in hand he dropped off the engine and, standing upon the ground, waited for the train to pass on and bring the sparking car to him. The engineer did not see him board the train near the flying sparks, but saw his lantern pass between two cars and across a car several times. When the train had proceeded about three miles beyond the bridge the engineer received a message that sparks were still flying. He stopped the train. On discovering Thirouin's absence, the engine was detached and run back to Bridge No. 51 where the crew found Thirouin sitting against the southerly girder at the easterly end badly injured. One foot had been cut off and was lying across the track opposite him; his cap, glasses and lantern standing upright were found at the westerly end of the bridge and blood stains were found on the westerly end of the center girder. This is all there was to show how the accident happened.

Evidently uncertain as to the cause of the accident, the draftsman of the plaintiff's complaint, after charging the defendant with negligence in maintaining a bridge with a center girder of improper height and insufficient clearance as the proximate cause of the injury, proceeded to strengthen the case by averring at random seven acts of negligence as contributory causes—a manner of pleading to which we adverted in Philadelphia & Reading Railway Co. v. Allen, 9 F. (2d) 854. The learned trial judge, describing the pleading as "a somewhat combined allegation of negligence" submitted the case on two issues; one, whether the engineer should have allowed Thirouin to go back and investigate the cause of the sparks without stopping the train; the other, that of insufficient clearance.

[1] It might first be noted there is no evidence that Thirouin was ordered to make the investigation or that an investigation of that kind was a part of his work as brakeman and, accordingly, there arises a question whether the act was in the line of his duty or was voluntary. But assuming it was his duty, it would seem that the continued movement of the train was the only way to continue the sparking and, perhaps, the only way to find the place and cause of the trouble in the dark. But laying aside this assumption, it is plain that when Thirouin had located the trouble—the springs of a car out on one side—he was in command of the situation. He could have signaled the engineer to stop the train if the occasion called for stopping it. Being thus able to stop the train and giving no signal to that end, no blame can be attributed to the engineer for not stopping, unless there was some circumstance of danger presently incident to the investigation, or some rule of train operation, which called for that action on his part. Except the bridge which the train was approaching —the next question to be considered—there is no evidence of anything in the situation which raised such a duty.

[2, 3] The remaining question is whether the bridge was a thing of danger to the crew of a passing train and whether, accordingly, the court erred in submitting the case on the issue of its insufficient clearance. Admittedly, a clearance of $11\frac{1}{2}$ inches between the center girder and a train, while sufficient for a train to pass, is not sufficient safely to admit the body of a person. It follows that the clearance was sufficient for the purpose for which it was provided and insufficient and highly dangerous for personal use. Against the dangers of personal use, however, the railroad company was required to afford protection only to those of its servants whose duties called them there. Cleveland, C., C. & St. L. Ry. Co. v. Haas, 35 Ind. App. 626, 74 N. E. 1003; B. & O. R. R. Co. v. Newell, 196 F. 866, 116 C. C. A. 428. We have not found, nor has our attention been directed to, any testimony in the record showing or intimating that Thirouin's duties required him to go within the clearance, or to the end of the girder, or upon the bridge. It is argued that in searching for the trouble he may have leaned out beyond the car just as it came to the end of the bridge and that he may have leaned so far out that he was struck and swept off the train by the center girder. That may be true, but there is no evidence to prove it. Blood on one end of a girder and a foot at the other end of the same girder and the body on the opposite side of the track against another girder open a wide field for speculation as

to how the accident happened and leave nothing certain except the fact of injury and death.

[4, 5] The action to recover for death, given by the federal act, is based on negligence. New Orleans & N. W. R. Co. v. Harris, 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167; Hobbs v. Great Northern Railway Co., 80 Wash. 678, 142 P. 20, L. R. A. 1915D, 503. Negligence arises when the master fails to perform some duty which he owes his servant, as, for instance, the duty to furnish him a reasonably safe place in which to work. Negligence is never to be presumed from the accident but must be affirmatively proved, P. & R. Ry. v. Cannon (C. C. A.) 296 F. 302; Severn v. P. & R. Ry. Co. (C. C. A.) 281 F. 784; Reading Co. v. Boyer (C. C. A.) 6 F.(2d) 185, 186; Patton v. Texas & P. Ry. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; New Orleans R. R. Co. v. Harris, 247 U. S. 367, 371, 38 S. Ct. 535, 62 L. Ed. 1167; and unless the evidence proves the two elements of negligence, the duty and its violation, the master cannot be held liable for the death of his servant, Reese v. P. & R. Ry. Co., 225 F. 518, 140 C. C. A. 660; Hogan v. N. Y. C. & H. R. Co., 223 F. 890, 139 C. C. A. 328; C., C. C. & St. L. Ry. Co. v. Haas, 35 Ind. App. 626, 74 N. E. 1003. In the instant case the evidence does not show how the employee met his death, whether through fault of the master or fault of his own. Reading Co. v. Boyer (C. C. A.) 6 F.(2d) 185. Of several conceivable causes of the accident the evidence fails to show the proximate cause for which alone liability may be fastened upon the defendant. Murray v. Pittsburgh, etc., R. Co., 263 Pa. 398, 403, 107 A. 21, 23; P. & R. Ry. Co. v. Boyer (C. C. A.) 6 F.(2d) 185. In this uncertainty the law does not allow a jury to speculate on how the accident happened.. However it occurred, there is no evidence which tends to prove that Thirouin's duties required him to be at the place where he was injured and so the law did not require the defendant to protect him from dangers of a place where his duties did not call him. B. & O. R. R. Co. v. Newell, 196 F. 866, 116 C. C. A. 428; Reese v. P. & R. Ry. Co., 225 F. 518, 140 C. C. A. 660; Lehigh Valley R. Co. v. Passinier (C. C. A.) 4 F.(2d) 46; Hogan v. N. Y. C. & H. R. R. Co., 223 F. 890, 139 C. C. A. 328.

On the proofs—which, from the very nature of the case, may be all that are obtainable—we are forced to find that error was committed in submitting the issues of the engineer's negligence and of insufficient clearance—a kind of decision which some day may be made less harsh by the presence of a Federal Workmen's Compensation Act.

The judgment below is reversed and a new trial awarded.